IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GREGORY J. LETENDRE,              )
     Plaintiff,                         )
                                         )
           v.                              )             Civil Action No.  3:24CV184 (RCY)
                                         )
PARALLON ENTERPRISES, LLC,        )
     Defendant.                         )
_____ )

## MEMORANDUM OPINION

Plaintiff Gregory Letendre, proceeding *pro se*, filed this action against Defendant Parallon Enterprises, LLC ("Parallon"), alleging, *inter alia*, age discrimination and retaliation under the Age Discrimination in Employment Act (ADEA) of 1967. The case is presently before the Court on Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiff's Motion to Amend Complaint, and Plaintiff's Amended Motion for Leave to File Third Amended Complaint. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Court finds that Plaintiff fails to state a claim upon which the Court can grant legal relief on all but his FMLA retaliation claim, and his proposed amendments would otherwise be futile. The Court will therefore grant the Motion to Dismiss as to all but the FMLA retaliation claim and deny leave to amend.

## I. PROCEDURAL HISTORY

Plaintiff filed his EEOC Charge[1] on July 28, 2023, EEOC Charge, ECF No 1-2 at

---

[1] At the motion to dismiss stage, a court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and are authentic, and matters of public record subject to judicial notice. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, Plaintiff attached his EEOC charge and his subsequently received Notice of Right to Sue Letter to his original state court Complaint. ECF No. 1-2 at 60–61. And though he neglected to reattach these documents to his Second Amended

6–7,[2] and on August 23, 2023, the EEOC issued Plaintiff a "Determination and Notice of Rights" letter, commonly referred to as a "Notice of Right to Sue Letter."  EEOC Not., ECF No 1-2 at 5. On October 31, 2023, Plaintiff filed his Complaint in the Circuit Court for the City of Richmond, Virginia.  Compl., ECF No. 1-2 at 2-4.  Plaintiff filed a First Amended Complaint on February 7, 2024, ECF No. 1-2 at 20–54, and a Second Amended Complaint on February 27, 2024, Not. Removal 1, ECF No. 1.  Plaintiff served Defendant with the First Amended Complaint on February 21, 2024, and Defendant timely removed the case to federal court on March 12, 2024, based on both federal question and diversity jurisdiction.  *Id.* at 2–4.

Because the state court record reflected that Plaintiff had sought leave to file a Second Amended Complaint prior to the case's removal, the Court ordered Defendant to file a notice of position regarding whether it opposed or consented to Plaintiff filing a Second Amended Complaint.  Order, ECF No. 3.  On March 22, 2024, Defendant consented to Plaintiff filing his Second Amended Complaint, Parallon Not., ECF No. 7, and so the Court ordered Plaintiff to submit his Second Amended Complaint to the Clerk for docketing, Order, ECF No. 8.  On March 29, 2024, Plaintiff complied, and the Second Amended Complaint became the operative complaint in this action.  2d Am. Compl., ECF No. 10.

Defendant filed the instant Motion to Dismiss and a Brief in Support thereof on April 12, 2024, properly accompanied by a notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  Mot. Dismiss, ECF No. 14; Br. Supp., ECF No. 15.  On May 3, 2024, Plaintiff filed his

---

Complaint, ECF No. 10, which is the controlling complaint for present purposes, *see* Order, ECF No. 8, the Court finds it proper to consider the charge and Notice either as documents initially attached to the Complaint or as documents that are a matter of public record.  *See Bland v. Fairfax Cnty.*, 2011 U.S. Dist. LEXIS 70204, at *15–16 (E.D. Va. June 29, 2011).

[2] Plaintiff's original Complaint and First Amended Complaint, along with service materials, are collectively filed at ECF No. 1-2.  For ease of reference, the Court provides pincites for appropriate document locations within this omnibus filing.  For this and other filings, the Court uses the pagination assigned by the CM/ECF system, and not any conflicting pagination appearing on the originally filed document(s).

Response to the Motion to Dismiss, ECF No. 17, as well as a Motion to Amend Complaint and a Brief[3] in Support thereof, ECF Nos. 18, 19.  On May 9, 2024, Defendant filed its Reply in support of the Motion to Dismiss.  ECF No. 20.[4]  Defendant filed its Opposition to Plaintiff's Motion to Amend/Correct Second Amended Complaint on May 17, 2024, Opp'n Mot. Amend, ECF No. 22, and on May 28, 2024, Plaintiff filed a late Reply, ECF No. 23.

While the foregoing motions remained pending, on November 22, 2024, Plaintiff filed an Amended Motion for Leave to File Third Amended Complaint, Am. Mot. Amend, ECF No. 24, which included Plaintiff's proposed Third Amended Complaint, Prop. Compl., ECF No. 24-1. Defendant responded on December 6, 2024, opposing Plaintiff's Amended Motion, Opp'n Am. Mot. Amend, ECF No. 25, and on December 9, 2024, Plaintiff replied, Reply Supp. Am. Mot. Amend, ECF No. 26.

## II.  FACTUAL ALLEGATIONS

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff."  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Such a standard, however, does not require

---

[3] The document is properly docketed as a "Brief in Support" of the Motion, though its actual header is "Motion for Brief in Support of Motion to Amend Complaint."  ECF No. 19.  This titular error notwithstanding, the parties all properly treated the filing as merely a brief in support, and the Court does so as well.

[4] Thereafter, Plaintiff filed an additional "Oppos[ition] to Defendant's Motion to Dismiss," which constitutes an improper sur-reply.  ECF No. 21.  The Court will not engage with this document, because Plaintiff did not seek leave of court to file such a brief, and nothing in Defendant's Reply raised new arguments or material that would otherwise warrant the filing of a sur-reply.  *See* E.D. Va. Loc. Civ. R. 7(F)(1) ("No further briefs or written communications may be filed without first obtaining leave of Court."); *Trs. of Columbia Univ. v. Symantec Corp.*, 2019 WL 13189619, at *2 (E.D. Va. Oct. 10, 2019) ("Sur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on the matter."); *Dillard v. Kolongo*, 2017 WL 2312988, at *6 (E.D. Va. May 25, 2017) ("Generally, courts allow a party to file a sur-reply only when fairness dictates based on new arguments raised in the previous reply.").  Although the Court recognizes Plaintiff's *pro se* status, Plaintiff is nevertheless obligated to abide by the Local Rules.

accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* Applying this standard, the Court construes the facts in the Second Amended Complaint[5] as follows.

Plaintiff is a 40-year-old man who began working for Defendant, which is "a[n] HCA Healthcare company," at the Richmond Shared Service Center as a Discrepancy Analyst in June 2014. 2d Am. Compl. ¶¶ 10, 17. Starting in February 2016, Plaintiff transitioned to working remotely and has worked from home since. *Id.*

### A. June 2014 to September 29, 2022

From his start-date in June of 2014 until May of 2018, Plaintiff received positive performance evaluations at work. *Id.* ¶ 20. Plaintiff's former manager described Plaintiff as "a hard worker" with "a friendly demeanor" who was "well liked amongst his coworkers." *Id.* However, Plaintiff's evaluations declined after a new manager, Kristin Fessick, took over. *Id.* ¶¶ 21–22. Plaintiff alleges Fessick assigned more complex and time-consuming work to Plaintiff and that he felt he was being set up to fail. *Id.* ¶ 23. From July 2018 to October 2018, while working for Fessick, Plaintiff received four corrective actions and was placed on a performance improvement plan (PIP). *Id.* ¶ 22. Plaintiff alleges that during his August 2018 meeting with Fessick, he expressed his concerns that he was being set up to fail, but told Fessick that he would not resign. *Id.* ¶ 23. Plaintiff alleges that he lost one year's worth of quarterly bonuses as a result of these 2018 corrective actions. *Id.*

In response to one of the 2018 corrective actions, Plaintiff met with Senior Manager Wendy Scott, who asked Plaintiff what could be done to assist Plaintiff in improving his productivity. *Id.*

---

[5] Plaintiff introduces additional facts about the case in his sur-reply. *See* ECF No. 21. However, to the extent Plaintiff attempts thereby to constructively amend his Complaint, he is barred from doing so via briefing. *Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

¶ 24.  Plaintiff expressed that he did not want to be singled out, to which Ms. Scott allegedly replied that Plaintiff would be singled out for the remainder of his career.  *Id.*

As a result of Plaintiff's performance, Fessick sought Plaintiff's consent to conduct a desktop review, which would allow a team lead to remote into Plaintiff's computer to view his computer screen while he worked on his accounts.  *Id.* ¶ 25.  Plaintiff initially declined, but later agreed to a desktop review on the condition that it would only happen one time.  *Id.* ¶ 26.

Throughout 2019 and 2020, Plaintiff alleges that Fessick and Plaintiff's team leads began to excessively bully Plaintiff by rejecting his transactions, issuing errors, and by continuing to assign more complex and undesirable accounts to him.  *Id.* ¶ 27.  Under these circumstances, Plaintiff's productivity did not improve, causing him to remain on the PIP and to not receive any recommendations for advancement; Plaintiff alleges that such recommendations would instead go to younger and less experienced team leads.  *Id.* ¶¶ 27, 28.

In October 2020, Plaintiff filed a complaint for discrimination[6] with "HCA's Ethics and Compliance Hot-line," alleging that he believed he was being forced to resign and that his emails were being deleted.  *Id.* ¶ 31.  Later, Plaintiff informed Fessick of the HCA complaint he had filed.  *Id.* ¶ 32.  During that same meeting, Plaintiff discussed the 2018 corrective actions and asked about advancement opportunities, to which Fessick allegedly responded by asking where Plaintiff would go or where he would advance to, given the "long line of graduates that are straight out of college, with degrees, applying for these positions."  *Id.*

From February 2021 to May 2021, after receiving a new work computer, Plaintiff's computer cursor would occasionally adjust the volume seemingly on its own.  *Id.* ¶ 40.  Plaintiff

---

[6]  Plaintiff does not state in his Second Amended Complaint what type of discrimination he reported.  *See generally* 2d Am. Compl.

5

believed that Defendant was accessing his work computer remotely and "listening [in]." *Id.* Plaintiff would later learn that only a "CO"[7] could remote into an employee's computer without their consent or knowledge. *Id.* ¶ 49.

In February 2022, Fessick resigned, and Sarah Hutchinson became Plaintiff's new manager. *Id.* ¶ 46. Around that same time, Plaintiff filed another complaint for discrimination and retaliation with HCA's ethics and compliance department. *Id.* ¶ 47. Plaintiff informed the investigator of his computer-related concerns, that he felt as if he was being singled out, and that it would be nice to receive the bonuses that "were wrongfully kept from him." *Id.* ¶ 48. Three months later, Hutchinson implemented a PIP for Plaintiff. *Id.* ¶ 51.

Plaintiff informed Hutchinson in July 2022 that he discovered "HCA Hidden files on his personal computer." *Id.* ¶ 52. As a result, Plaintiff asked Human Resources to reimburse Plaintiff for several personal computers that he had replaced on his own initiative, believing that they had been hacked by Defendant. *Id.* ¶ 53. After his meeting with Human Resources, Plaintiff received a one percent pay increase. *Id.* ¶ 54.

Based on his work environment, Plaintiff "ma[d]e"[8] two "discrimination claim[s]" with the EEOC in October 2020 and February 2022, both of which Plaintiff later voluntarily dismissed. *Id.* ¶ 30.

**B. October 2022, to March 29, 2024**

In October 2022, Hutchinson informed Plaintiff that he was being transferred from the Richmond office to Defendant's Florida facility, effective January 2023. *Id.* ¶ 55. Plaintiff alleges

---

[7] Plaintiff does not define who is a "CO" within Defendant's (or HCA's) employment structure.

[8] It is not clear from Plaintiff's Second Amended Complaint how far Plaintiff pursued these claims with the EEOC, e.g., if he filed formal charges of discrimination, or whether Defendant was ever put on notice of the claims. 2d Am. Compl. ¶ 30.

that from January 1, 2023, to April 14, 2023, Hutchinson and Plaintiff's team lead, Desirea Madatian, assigned Plaintiff an older and more difficult case load, and that he was only assigned twenty-nine accounts.  *Id.* ¶ 57.  Plaintiff also alleges that he was being assigned "fake accounts," which he reported to Hutchinson and Madatian in early 2023.  *See id.* ¶ 60.

Plaintiff continued to receive constructive feedback on his productivity.  Around March 2023, Hutchinson again informed Plaintiff that he was not meeting his productivity and was not asking questions during his weekly questions meeting.  *Id.* ¶ 61.  Plaintiff countered Hutchinson's feedback, stating that he was not properly trained and that he was not assigned enough accounts to meet his productivity requirements.  *Id.* ¶ 62.

Plaintiff submitted requests to Human Resources for arbitration hearings in both March and April 2023, to which Plaintiff received no response.  *Id.* ¶ 64.  Also in March 2023, Plaintiff initiated the EEOC charge currently before this Court, which he ultimately completed and submitted on or about July 27, 2023.[9]  *Id.* ¶¶ 65, 85.

In April 2023, Plaintiff began reporting to a new manager, Jacqueline Legaspi, whom he discovered was the manager for many employees who were over the age of 40.  *Id.* ¶ 66.  Specifically, Plaintiff learned that the members of an eighteen-person department, which Plaintiff was presumably a part of, were primarily over the age of 40.  *Id.*

Part of Plaintiff's employee duties included attending weekly virtual meetings, which Plaintiff found to be unproductive and humiliating, and which caused Plaintiff to feel nervous and anxious.  *Id.* ¶¶ 70–73, 206.  Plaintiff gives two primary examples.  First, Plaintiff alleges that Legaspi would often giggle when Plaintiff entered the meetings.  *Id.* ¶ 70.  Second, Plaintiff alleges

---

[9] In contrast to Plaintiff's stated submission date of July 27, 2023, *see* 2d Am. Compl. ¶ 85, the digital signature lines on Plaintiff's charge reflect July 28, 2023, EEOC Charge, ECF No. 1-2 at 6–7.

that a senior analyst and a team lead attempted to intimidate him during a virtual facility meeting by, respectively, flexing an arm once after the camera turned on and by giving Plaintiff an unwelcome look. *Id.* ¶ 71.

In June 2023, Plaintiff filed another report with HCA, wherein he reported that illegal activities were occurring during the weekly meetings, that he was working on fake Medicare accounts, and that he still could not view his employee file. *Id.* ¶ 76. HCA would later respond stating there was no evidence that the Medicare accounts were fake and that Plaintiff's difficulty in accessing his personnel files were a result of his transfer. *Id.* ¶ 86. Around this time, Legaspi scheduled a meeting with Plaintiff to address Plaintiff's productivity and to inform him that he was "struggling" to meet productivity expectations. *Id.* ¶ 80.

Later in June 2023, Plaintiff was approved for medical leave under the Family and Medical Leave Act (FMLA) with the expectation that Plaintiff would report back to work on July 27, 2023. *Id.* ¶ 82. However, Legaspi did not allow Plaintiff to return until he provided a physician's note. *Id.* ¶ 84. As a result, Plaintiff did not return until August 3, 2023, resulting in Plaintiff not getting paid for the missed days. *Id.* ¶ 84. Legaspi later realized and admitted that Plaintiff had previously submitted all the necessary information. *Id.*

On July 28, 2023, Plaintiff filed his completed EEOC charge, which alleged age discrimination and retaliation. Specifically, that

> Around 2021[,] I filed a complaint that my Manager, President and HR Manager was listening through the computer. Shortly afterwards, they resigned from their positions. I have been requesting a copy of my personnel files for the last three years and have yet to receive them. January 1, 2023, I was transferred to the Florida location. I was placed in a group with older employees. I am currently on short term disability.
>
> . . . .

8

> I believe that I was subjected to retaliation by being transferred to another location when I filed a complaint[,] in violation of the Age Discrimination in Employment Act of 1967, as amended.

EEOC Charge, ECF No. 1-2 at 6–7.[10]  Defendant was notified of Plaintiff's EEOC charge in early August 2023.  2d Am. Compl. ¶ 86.  After filing his EEOC charge, Plaintiff filed an additional report with HCA in October 2023, and on November 13, 2023, he filed a complaint with the Office of the Attorney General – Office of Civil Rights in Richmond, VA.  *Id.* ¶ 103.

Between October 2023 and January 2024, Plaintiff continued to receive corrections from his supervisor.  *Id.* ¶¶ 94, 102, 117–18.  Specifically, Plaintiff received two corrective actions in October 2023, for leaving work early on four different occasions without having approved paid-time off and for missing a team meeting.  *Id.* ¶ 94.  On or around December 2023, Legaspi met with Plaintiff to inform him that he was not meeting expectations.  *Id.* ¶ 102.  Later, on January 26, 2024, Plaintiff missed work due to computer difficulties but did not inform his supervisor that he would not be working that day.  *Id.* ¶¶ 117–18.  As a result, Plaintiff received a corrective action for failing to notify his supervisor of his absence.  *Id.* ¶ 117.  The following day, Legaspi notified Plaintiff that he would be required to attend weekly productivity meetings with her and another team lead to better track and discuss Plaintiff's weekly productivity results.  *Id.* ¶ 118.

Relevant to Plaintiff's defamation claim, Plaintiff describes the following two situations.  First, Plaintiff met with three supervisors in October 2023, to address the corrective actions Plaintiff received from Legaspi.  *Id.* ¶ 95.  During the meeting, one of Plaintiff's supervisors, Eric Rucker, stated that Plaintiff did not want to attend the team meetings due to Plaintiff's anxiety from attending huddles in large groups.  *Id.*  Second, during a web-ex meeting with Legaspi,

---

[10] The charge is uploaded to the docket out-of-order, such that page 2 precedes page 1.  *See* ECF No. 1-2 at 6–7.  The Court quotes the relevant language in the order in which it would have appeared, were the pages uploaded consecutively.

Legaspi noted that Plaintiff did not want to attend weekly group meetings because he was shy. *Id.* ¶ 110.

Between September 2023 and February 2024, Plaintiff experienced a number of technological difficulties with his computer. *See generally id.* ¶¶ 87–123. These included problems connecting to the network, signing in, instances where it appeared someone was signing into the computer using a different account, and emails being changed or deleted, among other issues. *Id.* As a result, Plaintiff had to exchange his work computer multiple times and at times use his personal computer. *Id.* Plaintiff also alleges that that Defendants called law enforcement to respond to his home on January 25, 2024, in an attempt access Plaintiff's computer. *Id.* ¶¶ 116, 196–200.

Lastly, with respect to Plaintiff's age discrimination claim, Plaintiff notes that the Florida facility filed for bankruptcy in 2018–2019 and was still recovering, which had resulted in some older employees being laid off. *Id.* ¶ 68. Plaintiff contrasted this with the Richmond office, which he alleges is aggressively growing and catering to "some of [Plaintiff's] younger" co-workers. *Id.*

### III.  STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*,

572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added) (citing *Twombly*, 550 U.S. at 556). Notably here, a *pro se* complaint is "to be liberally construed" and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023). "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Iqbal*, 556 U.S. 662, 678.

## IV. DISCUSSION

Plaintiff's Second Amended Complaint includes fifteen counts[11] predicated on the claims

---

[11] The Court adopts Plaintiff's numbering of the Counts, i.e., Counts I through XVI, while recognizing that Plaintiff's Second Amended Complaint does not include a Count VIII. The Court further corrects for certain roman-numeral-misnumbering (e.g., VIIII is corrected to IX).

from his July 2023 EEOC charge, other federal employment law related claims, and various ostensible state law claims. Specifically, Counts I, II, and III allege age discrimination, age-based hostile work environment, and retaliation for protected activity. Count VI alleges "FMLA [r]etaliation," while Count VII alleges disability-based discrimination and harassment. Counts IX, X, and XII allege further retaliation for Plaintiff's filing of his July 2023 EEOC charge. Finally, the remaining claims variously allege slander and libel (Counts IV and XIII), "[i]nterception of [o]ral [c]ommunications" (Count V), retaliation for whistleblowing (Count XI), computer trespass (Count XIV), identity theft (Count XV), and withholding of wages (Count XVI). In support of the instant Motion to Dismiss, Defendant argues that Plaintiff's employment-related claims are either untimely, unexhausted, or fail to state a claim upon which relief can be granted. As to the remaining claims, Defendant generally argues that Plaintiff has failed to state any claim upon which relief may be granted. For the reasons set forth below, the Court agrees as to all but Plaintiff's FMLA retaliation claim. And, as to the Counts facing dismissal, because Plaintiff does not persuade the Court that his proposed amendments would cure the deficiencies identified in the presently controlling complaint, the Court will deny Plaintiff leave to amend.

## A. Administrative Exhaustion: ADA & ADEA Claims

Counts I, II, III, and VII appear to rest on theories of age- and disability-based discrimination, harassment, and/or retaliation. The Court construes these as claims brought pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq*., and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq*. Before filing suit under either the ADEA or ADA, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC. 29 U.S.C. § 633a(d) (ADEA administrative exhaustion requirement); 42 U.S.C. § 12117(a) (ADA incorporating Title VII administrative exhaustion requirement); *see also Walton*

*v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022).  This requirement imposes two limitations on any subsequently filed civil suit.  First, such subsequent suit is limited in substantive scope, insofar as "[o]nly those discrimination claims stated in the initial [EEOC] charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit."  *Walton*, 33 F.4th at 172 (quoting *Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019)).  Second, even in-scope claims must have been brought in the original EEOC charge within the applicable statute of limitations.  *See* 29 U.S.C. § 626(d) (setting statute of limitations period for ADEA claims); 42 U.S.C. § 12117(a) (ADA incorporating Title VII administrative exhaustion requirement, which includes the limitation timeframe in 42 U.S.C. § 2000e-5(e)(1)).  Because Virginia is a "deferral" state, that period is 300 days.  *See Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 517 (4th Cir. 2000) (identifying Virginia as a "deferral state"); *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 811 (E.D. Va. 2003) ("In a 'deferral' state, like Virginia, this [EEOC] charge must be filed no later than 300 days 'after the unlawful practice occurred.'").[12]

Here, the EEOC charge contained the following sparse allegations:

Around 2021[,] I filed a complaint that my Manager, President and HR Manager was listening through the computer.  Shortly afterwards, they resigned from their positions.  I have been requesting a copy of my personnel files for the last three years and have yet to receive them.  January 1, 2023, I was transferred to the Florida location.  I was placed in a group with older employees.  I am currently on short term disability.

. . . .

---

[12] Certain exceptions do exist with respect to this statute of limitations, e.g., in the limited circumstances provided by equitable tolling or the continuing violation doctrine.  *See Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (discussing equitable tolling); *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (discussing the continuing violation doctrine).  Neither doctrine is applicable here.

> I believe that I was subjected to retaliation by being transferred to another location when I filed a complaint[,] in violation of the Age Discrimination in Employment Act of 1967, as amended.

EEOC Charge, ECF No. 1-2 at 6–7.  Based on the digital signature on the charge, it appears that Plaintiff signed and submitted the charge on July 28, 2023.  *Id*.  Thus, Plaintiff's only properly exhausted ADA and ADEA claims are those arising between October 1, 2022, and July 28, 2023,[13] related to retaliation he experienced (via his transfer to Florida) "in violation of the [ADEA]." *Id*.

Framed within this scope, it is clear that Plaintiff's claims for age-based discrimination (Count I), age-based hostile work environment (Count II), and disability-based harassment (Count VII) were not properly exhausted.  Although the EEOC charge mentions in passing that Plaintiff "was transferred to the Florida location" and "was placed in a group with older employees," and that he was, at the time, "on short term disability," *id.*, none of those allegations actually constitute a claim of discrimination.  Rather, Plaintiff's only clear allegation is that he "was subjected to *retaliation* [for filing his complaint(s)] by being transferred to another location . . . in violation of the [ADEA]." *Id.* (emphasis added).  Thus, the new claims raised in Counts I, II, and VII will be dismissed as unexhausted.  *Walton*, 33 F.4th at 172 ("A claim will . . . typically be barred if the administrative charge alleges one type of discrimination   . . . and the claim encompasses another type . . . ."); *see also, e.g.*, *Bannister v. Wal-Mart Stores E., L.P.*, 843 F. Supp. 2d 610, 617 (E.D.N.C. 2012) (finding that the plaintiff's harassment and hostile work environment claims were outside the scope of the EEOC charge because "[t]he discrete acts complained of [were] not sufficient to put [the d]efendant on notice of a claim that its workplace [was] 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment.'" (third

---

[13] October 1, 2022, being 300 days before July 28, 2023.

and fourth alterations in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993))). The ADEA retaliation claim in Count III is the only claim that passes the administrative exhaustion hurdle; the Court proceeds to a substantive review of the allegations, below.

## B. Federal Retaliation Claims

In addition to the ADEA retaliation claim in Count III that was properly exhausted, Plaintiff raises several retaliation claims that are not subject to administrative exhaustion requirements, specifically a claim for Family and Medical Leave Act (FMLA) retaliation in Count VI, and various claims in Counts IX, X, and XII for retaliation he experienced after filing his EEOC charge. *See Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 630 (D. Md. 2013), *aff'd*, 615 F. App'x 119 (4th Cir. 2015) ("Administrative exhaustion is not required to bring a FMLA suit."); *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014) ("[A] plaintiff may raise for the first time in federal court the claim that her employer retaliated against her for filing with the EEOC . . . ."), *abrogated on other grounds*, *Fort Bend Cnty. v. Davis¸* 587 U.S. 541 (2019) (determining that Title VII's administrative exhaustion requirement is "mandatory without being jurisdictional"). For the reasons that follow, the Court determines that only one of Plaintiff's federal retaliation claims survives 12(b)(6) scrutiny.

### 1. ADEA Retaliation (Count III)

In Count III, Plaintiff asserts that "about October 2022, Plaintiff was informed that he was being transferred to [the] Florida facility in January 2023. Plaintiff . . . believes he was transferred for continuing to make complaints to Management, and Human Resources, including how to identify what he considered to be fake Medicare accounts." 2d Am. Compl. ¶ 141. Plaintiff further alleges that he "would be assigned less than his daily minimum requirements of 30 accounts a day," and that his team lead would, in contrast, "say that she tr[ies] to send[] about 30 accounts a

day to . . . Plaintiff."[14]  Although not specified as such in the Complaint, Plaintiff's EEOC charge

makes clear that Plaintiff believes this retaliation occurred in violation of the ADEA.  EEOC

Charge 2, ECF No. 1-2 at 6 ("I believe that I was subjected to retaliation by being transferred to

another location when I filed a complaint[,] in violation of the [ADEA].").

      To state a claim for retaliation under the ADEA, a plaintiff must allege sufficient facts to

establish a *prima facie* case of retaliation.  To do so, a plaintiff must show that (1) he engaged in

protected activity, (2) the employer took adverse action against him, and (3) a causal relationship

existed between the protected activity and the adverse employment action.  *Causey v. Balog*, 162

F.3d 795, 803 (4th Cir. 1998) (addressing retaliation under both Title VII and ADEA).  As

Defendant properly observes, Plaintiff fails to state a claim on this Count—even when liberally

construed as an ADEA claim—because, *inter alia*, he does not allege that he engaged in any

activity protected by the ADEA.  Br. Supp. 11.

      According to both the EEOC charge and the Complaint, Plaintiff's activity that allegedly

triggered the "retaliation" of which he complains was his "mak[ing] complaints to Management,

and Human Resources, [regarding] fake Medicare accounts."  *Compare* 2d Am. Compl. ¶ 141,

*with* EEOC Charge 2, ECF No. 1-2 at 6.  However, engaging in protected activity for purposes of

the ADEA involves either "making a charge of age discrimination or opposing a practice made

unlawful *by the ADEA*."  *Cole v. Fam. Dollar Stores of Md., Inc.*, 811 F. App'x 168, 171–72 (4th

Cir. 2020) (emphasis added) (citing 29 U.S.C. § 623(d)).  Because Plaintiff was not lodging

---

[14] Plaintiff includes various other allegations in connection with this Count that pre-date the limitations period for inclusion in a claim related to his EEOC charge.  *See supra* Part IV.A.  For example, Plaintiff alleges that he "continued to notice[] and report unusual behaviors in June of 2021," 2d Am. Compl. ¶ 139, and that in "[a]bout July 2022, Plaintiff informs [sic] he has discovered[] HCA hidden files located in his personal computer, and that he would later sue Parallon," *id.* ¶ 140.  The Court may, as needed, consider these allegations as relevant background evidence for otherwise timely claims. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)).

complaints regarding age discrimination or otherwise "opposing a practice made unlawful by the ADEA," *Cole*, 811 F. App'x at 172, when he made complaints regarding allegedly fake Medicare accounts, his activity does not constitute protected activity, and as such he has failed to state a claim for retaliation under the ADEA. The Motion to Dismiss will therefore be granted as to Count III.

### 2. FMLA Retaliation (Count VI)

Plaintiff's next retaliation claim lies in connection with his taking leave under the FMLA. To state a claim for retaliation under the FMLA, a plaintiff must show that he engaged in protected activity and suffered an adverse action that was causally linked to the protected activity. *See Yashenko v. Harrah's N.C. Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (noting that "FMLA claims arising under [a] retaliation theory are analogous to those derived under Title VII and so are analyzed under the [same] framework"). The adverse action need not necessarily be workplace- or employment-related. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006) (antiretaliation provision of Title VII is not limited to workplace-related or employment-related retaliatory acts, but rather generally prohibits "retaliation that produces an injury or harm"); *Yashenko*, 446 F.3d at 551 (Title VII's framework and standards apply to FMLA retaliation claims). On this claim, the Court disagrees with Defendant and finds that Plaintiff has alleged facts sufficient to establish all three of the *prima facie* elements of FMLA retaliation and so has stated a claim in this Count.

The first element is easy enough and is undisputed—Plaintiff engaged in protected activity by taking thirty days' FMLA leave, beginning on June 28, 2023. 2d Am. Compl. ¶ 158; *see also* Br. Supp. Mot. Dismiss 15. After that, though, the water muddies. The factual allegations Plaintiff provides to support the inference that he suffered adverse actions after taking his FMLA leave

amount to the following:  his manager delayed Plaintiff's return-to-work by one calendar week, resulting in Plaintiff not receiving pay for those days, *id.* ¶ 160; Plaintiff had "different work standards" after his return and did not receive emails that other "select individuals" did "containing more work assignments to allow [them] to meet productivity standards," *id.* ¶ 161; Plaintiff received two corrective actions on October 10, 2023, *id.* ¶ 163; and Plaintiff experienced efforts by IT and management to cover up practices and confuse Plaintiff, *id.*  Plaintiff conclusively alleges that, by these actions, "Plaintiff [was] being denied his right to work[, which] would cause a loss of income, and further distress." *Id.* ¶ 162.  Defendant argues that these facts fail to plausibly support a *prima facie* case for retaliation because (1) Defendant had a right to request supporting medical documentation before permitting Plaintiff to return to work, and thus its supposed delaying of Plaintiff's return to work cannot constitute an actionable claim for retaliation, and (2) Plaintiff's other allegations do not plausibly amount to adverse action.  Br. Supp. Mot. Dismiss 15.  The Court considers Defendant's challenge against the two remaining prongs of the required *prima facie* case:  adverse action and causal connection.

   a.  *Plaintiff Adequately Alleges That Defendant Took Adverse Action Against Him*

   To state an adverse action for purposes of FMLA retaliation, a plaintiff must show (1) actual injury or harm, or (2) "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from [taking FMLA leave]."'"  *Burlington*, 548 U.S. at 67–68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *see also Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 656 (4th Cir. 2023) (to constitute an actionable adverse action in the retaliation context, the action must be "materially adverse," meaning it "could well dissuade a reasonable worker from making or supporting a charge of discrimination.").  Here, the Court finds that at least some of the

incidents alleged by Plaintiff do amount to adverse actions sufficient to satisfy prong two of the *prima facie* case for FMLA retaliation.

Specifically, Plaintiff sufficiently alleges an adverse action with respect to his delayed return to work and his different work standards upon return. While Defendant is correct that 29 C.F.R. § 825.312 authorizes it to request a fitness-for-duty certification before permitting Plaintiff to return to work, *see, e.g.*, 29 C.F.R. § 825.312(e); Br. Supp. Mot. Dismiss 15, Plaintiff's allegations—liberally construed and taken as true—suggest that Plaintiff had in fact already provided the necessary certification, and that it was on file with Defendant. 2d Am. Compl. ¶¶ 84, 160. Such allegations support a plausible inference that Defendant's subsequent request for yet another certification was a retaliatory delay tactic outside the scope of its regulatory discretion that actually harmed Plaintiff, insofar as he was not paid for the week during which he did not return to work as anticipated. *Cf. Larsen v. Berlin Bd. of Educ.*, 588 F. Supp. 3d 247, 258 (D. Conn. 2022) ("Several district courts in the Second Circuit have concluded that discretionary employee examination or testing requirements do not *by themselves* amount to adverse employment action for the purposes of federal employment discrimination and retaliation claims." (emphasis added) (collecting cases)). Similarly, Plaintiff's allegations regarding his "different work standards" and exclusion from work opportunities (by way of not being included on project emails) plausibly allege retaliatory acts "that a reasonable employee would have found . . . materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from [taking FMLA leave].""" *Burlington*, 548 U.S. at 67–68 (quoting *Gonzales*, 438 F.3d at 1219); *see, e.g.*, *Corbett v. Richmond Metro. Transp. Auth.*, 203 F. Supp. 3d 699, 710 (E.D. Va. 2016) (finding that Plaintiff's "reduced role in the office" following FMLA leave was sufficient to allege an adverse action for purposes of stating a FMLA retaliation claim).

The Court agrees with Defendant, however, that Plaintiff's allegations regarding the corrective actions he received and IT's and management's efforts to "confuse" Plaintiff by deleting meetings and emails do not amount to adverse action for purposes of FMLA retaliation. With respect to the corrective actions, Plaintiff's allegations disclose that these were issued because Plaintiff left work early on four separate occasions without having secured prior leave-approval and because he failed to join a "weekly huddle" meeting. 2d Am. Compl. ¶¶ 94, 176–77. These circumstances, without more, do not support a finding that a reasonable employee would have found the actions of Defendant to be materially adverse. *See Adams v. Anne Arundel Cnty. Pub. Sch*., 789 F.3d 422, 431 (4th Cir. 2015) (noting that, while "the analysis . . . is necessarily dependent on the circumstances, "reprimands and poor performance evaluations occur with some frequency in the workplace" and thus "are much less likely to involve adverse . . . actions" than other, more objectively serious employer conduct (citing *Burlington*, 548 U.S. at 69)). Specifically, the Court does not find that, when viewed in light of the circumstances in which they were issued, the corrective actions Defendant issued to Plaintiff "might have 'dissuaded a reasonable worker from [taking FMLA leave].'" *Burlington*, 548 U.S. at 68 (quoting *Gonzales*, 438 F.3d at 1219); *see also Hinton v. Va. Union Univ*., 185 F. Supp. 3d 807, 831–33 (E.D. Va. 2016) (collecting cases from within the Fourth Circuit for the proposition that "a reprimand without collateral consequences is so marginally adverse that it qualifies as neither 'materially adverse' nor [an] 'adverse employment action.'").[15] And lastly, the Court finds that the IT and

---

[15] The Court alternatively finds that Plaintiff has not sufficiently alleged that these corrective actions were "materially adverse" in terms of causing actual harm or injury, either. *See Burlington*, 548 U.S. at 67. Although Plaintiff alleges elsewhere in his Complaint that receiving the corrective actions caused Plaintiff to experience frustration, stress, increased blood pressure, and migraines, 2d Am. Compl. ¶ 178, and that he lost sleep over them, *id*. ¶ 179, given the otherwise reasonable nature of the corrective actions, the Court declines to find that these alleged after-effects support a conclusion of material adversity. *See, e.g., Settle v. Balt. Cnty*., 34 F. Supp. 2d 969, 992 (D. Md. 1999) ("emotional anxiety" resulting from "a disciplinary investigation [that] is reasonably rooted in articulable facts justifying such an investigation" not sufficient to state adverse action), *aff'd sub nom. Harris v. Earp*, 203 F.3d

management "cover up" that Plaintiff alleges, 2d Am. Compl. ¶ 163, does not amount to an actionable adverse action because Plaintiff does not allege any corresponding actual harm, nor facts to plausibly suggest that a reasonable worker aware of Plaintiff's experience (i.e., the disappearing e-mail inboxes and conflicting Webex accounts) would have been dissuaded from taking FMLA leave. *See Burlington*, 548 U.S. at 67–68. Without such supporting allegations, Plaintiff's claims amount to no more than naked assertions, and as such, they do not survive 12(b)(6) scrutiny.

### b. *Plaintiff Plausibly Alleges a Causal Connection*

Analyzing only the adverse actions that were sufficiently alleged, the Court finds that Plaintiff has alleged sufficient facts from which the Court may draw the necessary plausible inference of a causal connection between his taking of FMLA leave (the underlying protected activity) and his delayed return to work and his differing work standards upon return. Critically, Defendant's actions are sufficiently close in time to support a plausible inference of causality. *See Yashenko*, 446 F.3d at 551 ("While evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a *prima facie* case of causality.'" (quoting *Williams v. Cerberonics, Inc*., 871 F.2d 452, 457 (4th Cir. 1989)). Accordingly, the Court finds that Plaintiff has sufficiently alleged a causal connection between his protected activity and Defendant's acts of delaying Plaintiff's return to work and imposing different work standards after Plaintiff's return, and thus he has satisfied the third prong of the necessary *prima facie* case.

---

820 (4th Cir. 2000), *and Settle v. Balt. Cnty. Police Dep't*, 203 F.3d 822 (4th Cir. 2000); *Adams*, 789 F.3d at 431 (approvingly citing *Settle*, 34 F. Supp. 2d at 992).

Based on the foregoing, the Court finds that Plaintiff has stated a *prima facie* claim for FMLA retaliation, and so the Court will deny Defendant's Motion to Dismiss as to Count VI.

### 3. Retaliation for EEOC Filing (Counts IX, X, & XII)

In Counts IX, X, and XII, Plaintiff generally alleges that he experienced acts of retaliation after he filed his EEOC complaint. This retaliation took the form of Defendant issuing Plaintiff two corrective actions on October 10, 2023 (Count IX), Defendant creating a hostile work environment (Count X), and Defendant's sending police and a firetruck to Plaintiff's home on January 25, 2025, and otherwise intimidating Plaintiff and leaving him in fear of Defendant's IT Department (Count XII). Defendant argues that Plaintiff has not plausibly alleged that any of these actions constituted retaliation, and the Court should dismiss these Counts. For the reasons described below, the Court agrees.

Just as with FMLA retaliation, to state a *prima facie* case of retaliation in this context, "a plaintiff must show that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011) (quoting *Beall v. Abbott Lab'ys.*, 130F.3d 614, 419 (4th Cir. 1997), *abrogation on other grounds recognized by Gilliam v. S.C. Dept. of Juv. Just.*, 474 F.3d 134, 140 (4th Cir. 2007)). At issue in the present case are the second and third elements: whether the acts aggrieved by Plaintiff amount to adverse action, and, if so, whether Plaintiff has pleaded facts to plausibly suggest that such action was causally connected to his filing a complaint with the EEOC.

The Court can dispose of all three Counts with relative ease. Count IX predicates Plaintiff's claim of retaliation purely on the two corrective actions Plaintiff received in October of 2023, approximately two months after Defendant was "informed of the charges filed with [the] EEOC."

2d Am. Compl. ¶¶ 86, 176–78, 180.  For the reasons discussed in the context of Plaintiff's FMLA retaliation claim, *supra* Part IV.B.2.a., the Court does not find that Plaintiff has alleged facts from which the Court may draw a reasonable inference that these corrective actions were "materially adverse" inasmuch as they "could well dissuade a reasonable worker from" filing an EEOC complaint.  *Israelitt v. Enter. Servs*. LLC, 78 F.4th 647, 656 (4th Cir. 2023) (quoting *Burlington*, 548 U.S. at 68).  Thus, Count IX fails to state a claim for retaliation.

In Count X, Plaintiff alleges that he faced a "hostile environment for filing with [the] EEOC," *see generally* 2d Am. Compl. ¶¶ 182–86.  However, the events cited in support of this hostile work environment claim *preceded* Plaintiff's filing of the EEOC complaint underpinning this action.  *Compare id.* ¶ 183 (basing the claim on a meeting that occurred in June of 2023), *with id.* ¶ 175 (noting that Plaintiff filed his complaint with the EEOC on July 28, 2023); *and id.* ¶ 86 (alleging that Defendant was informed of Plaintiff's EEOC charge in August of 2023).  Thus, Plaintiff fails to state a claim for retaliation in Count X, and the claim will be dismissed.

This leaves Count XII, Plaintiff's generalized "Retaliation" claim.  In support of this claim, Plaintiff asserts that Defendant contacted the police on January 25, 2024, who in turn dispatched three patrol cars and a firetruck to Plaintiff's residence to "check his status."  2d Am. Compl. ¶ 196.  Plaintiff alleges that this was done to force Plaintiff to log into his computer, so that IT "could erase data and sync his computer," *id.* ¶ 197, and that it left him in fear of HCA's IT department, *id.* ¶ 200.  Even if the Court were to assume *arguendo* that Defendant used local first responder resources as a diversion to facilitate their remote erasure of Plaintiff's computer, and further that such activity satisfies the *Burlington* standard for material adversity, Plaintiff has entirely failed to plead any facts that could support a plausible inference that this action was causally connected to Plaintiff's filing of an EEOC complaint six months prior.  Accordingly, Plaintiff has failed to

articulate the essential third prong of a *prima facie* case for retaliation, and thus has failed to state a claim.  Count XII will therefore be dismissed.

## C.  Remaining "State Law" Claims

The Court now addresses the remainder of Plaintiff's allegations against Defendant, for which Plaintiff cites no federal basis.  Thus, the Court construes them as state law claims.

### 1.  Slander and Libel (Counts IV and XIII)

Plaintiff makes two distinct claims of defamation:  (1) his personnel file contained false information (Count IV), and (2) inaccurate information was shared during a meeting with his supervisors regarding the reason(s) for his absence from Web-ex huddle meetings (Count XIII).[16] Neither states a legally cognizable claim for relief.

"Virginia law allows a person who has been the subject of libel or slander to bring a cause of action for defamation." *Jackson v. Hartig*, 645 S.E.2d 303, 308 (2007); *Nestler v. Scarabelli*, 886 S.E.2d 301, 308 n.5 (Va. Ct. App. 2023) ("Written defamation is libel; spoken is slander.  We make 'no distinction between' libel and slander." (quoting *Fleming v. Moore*, 275 S.E.2d 632, 635 (1981))).  A claim for defamation must allege the "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015) (quoting *Tharpe v. Saunders*, 737 S.E.2d 890, 893 (Va. 2013)).  For "publication" to occur, the statement must be transmitted "to some third person so as to be heard and understood by such person." *Thalhimer Bros. v. Shaw*, 159 S.E.2d 87, 90 (Va. 1931).  An actionable statement is one that is "both false and defamatory." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005).  Finally, as to

---

[16] Both claims also include reference to Virginia criminal statutes, but those cannot serve as the predicate to a civil claim.  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the [criminal] prosecution or nonprosecution of another."); *Lopez v. Robinson*, 914 F. 2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution." (citation omitted)).  Thus, any attempt to bring a claim based on the Virginia Criminal Code is legally frivolous.

intent, a private figure[17] must allege facts to show that "the defendant either knew [the statement] to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 724–25 (Va. 1985).

Plaintiff's claim in Count IV fails because Plaintiff alleges no facts that can plausibly support the element that his personnel file was published to any third party. Plaintiff's allegations are couched in hypothetical terms, insofar as "the false information . . . would ruin [Plaintiff's] reputation when show[n] to past[] and future managers." 2d Am. Compl. ¶ 146. Furthermore, Plaintiff's allegations—even taken as true—do not support an inference that his personnel file was, in fact, "false and defamatory," such that the file would constitute an "actionable statement." *Kollman*, 612 S.E.2d at 206. Simply because Defendant did not "remove[] all negative documents from Plaintiff's file" as Plaintiff would have liked does not in and of itself render the file, as a whole, false. Thus, Plaintiff has failed to allege facts to support a claim for defamation in Count IV, and this Count will be dismissed.

Plaintiff's claim in Count XIII likewise fails. Plaintiff appears to frame this claim in terms of defamation *per se*, which is actionable "if, among other circumstances not pertinent here, it 'imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of the duties' or 'prejudices the party in [his] profession or trade.'" *Steele v. Goodman*, 382 F. Supp. 3d 403, 419 (E.D. Va. 2019) (quoting *Yeagle v. Collegiate Times*, 497 S.E.2d 136, 138 n.2 (Va. 1998)); *see* 2d Am. Compl. ¶ 207 (alleging that the statements "imply[] the Plaintiff is unable to perform his job in this type of environment"). However, the statements of which Plaintiff

---

[17] The standard differs for public and private figures alleging defamation. *Jackson v. Hartig*, 645 S.E.2d 303, 308 (Va. 2007).

complains are merely that Plaintiff has anxiety, 2d Am. Compl. ¶ 204, and that he "is shy," *id.* ¶ 205, and that these characteristics are why Plaintiff did not attend certain team meetings. Shyness and anxiety do not "impute an unfitness to perform the duties of [Plaintiff's] job," nor do they otherwise constitute descriptions that would qualify as defamation *per se*. *Steele*, 382 F. Supp. 3d at 419. Beyond this shortcoming, Plaintiff alleges no facts to support that the publishers of the purportedly defamatory statements spoke despite knowing the statements were false or otherwise acted negligently in failing to ascertain the facts on which their statements were based. *Harris*, 325 S.E.2d 713, 724–25. Lacking any allegations to support the necessary intent element, Plaintiff has again failed to state a claim for defamation as to Count XIII. The Court will therefore grant the Motion to Dismiss as to this Count.

### 2. Interception of Oral Communications (Count V)

Plaintiff predicates Count V on Va. Code Ann. § 19.2-62, which governs the "Interception, disclosure, etc., of wire, electronic or oral communications unlawful; penalties; exceptions." *See* 2d Am. Compl. ¶ 152. Unfortunately for Plaintiff, this is a criminal statute. *See* Va. Code Ann. § 19.2-62 (establishing that violations of subsection A will be punished as "a Class 6 felony" and violations of subsection C "shall be punishable as a Class 1 misdemeanor"). As previously noted, *supra* n.17, private individuals cannot base a civil claim on a criminal statute. *See also L.J. v. Wilbon*, 633 F.3d 297, 307 (4th Cir. 2011) ("The Supreme Court has long held that private plaintiffs may not bring suits to enforce statutes that do not provide a private cause of action."). Thus, the Court will grant the Motion to Dismiss as to Count V.

### 3. Whistleblowing (Count XI)

In Count XI, Plaintiff does not cite any basis for his claim of "Whistleblowing;" he instead merely recites allegations that generally suggest Plaintiff believed that he identified "Medicare

Fraud," he reported this discovery to various ethics and compliance individuals, and that after reporting, he experienced computer issues and received a corrective action for "not notifying . . . Management [of his] absence."  *See* 2d Am. Compl. ¶¶ 188–93.  As Defendant correctly notes "Whistleblowing" is not itself a cognizable claim.  Br. Supp. Mot. Dismiss 19.  And although Virginia does prohibit employers from retaliating against employees for whistleblowing, *see* Va. Code Ann. § 2-2.3011, Plaintiff does not allege sufficient facts to support a plausible inference that Defendant did in fact retaliate against him for whistleblowing.  *See* 2d Am. Compl. ¶¶ 188–93.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).  Plaintiff's Count XI fails to set forth sufficient facts for this Court to draw *reasonable* inferences in his favor without taking on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for [Plaintiff]."  *Beaudett*, 775 F.2d at 1278.  Because Plaintiff has neither given Defendant notice of the legal basis for this claim nor alleged facts to support the closest identifiable avenue for relief, the Court will grant the Motion to Dismiss as to Count XI.

### 4.  Computer Trespass (Count XIV)

In Count XIV, Plaintiff alleges that Defendant committed "acts of computer trespass as defined in Virginia Code [§] 18.2-152.4."  2d Am. Compl. ¶ 210.  Specifically, Plaintiff alleges that "[d]uring 2022, the Plaintiff discovered HCA files located on his personal computer that he was not informed of."  *Id*. ¶ 211.  Based on this discovery, Plaintiff believed that Defendant "access[ed] the Plaintiff's personal computer."  *Id.*  Defendant argues that Plaintiff fails to state a claim because the facts alleged do not support a plausible inference that Defendant accessed Plaintiff's computer without authorization, and further because Plaintiff fails to allege any injury

as a result of the alleged computer trespass, which is a necessary element of such a claim. Br. Supp. Mot. Dismiss 22. The Court agrees with Defendant that Plaintiff has failed to allege any facts to suggest injury, and on that basis alone he has failed to state a claim.

The Virginia Computer Crimes Act ("VCCA"), Va. Code Ann. §§ § 18.2-152.1, *et seq.*, provides a civil cause of action for any "person whose property or person is injured by reason of a violation of [the VCCA]." Va. Code Ann. § 18.2-152.12. The provision Defendant allegedly violated, Va. Code Ann. § 18.2-152.4, prohibits "computer trespass" in various forms. Yet, as Defendant notes, "[u]nder the VCCA, only a party who is 'injured by reason of a violation' of the computer trespass provision may bring a private right of action." *OpenRisk, LLC v. MicroStrategy Servs. Corp.*, 876 F.3d 518, 527 (4th Cir. 2017) (quoting Va. Code Ann. § 18.2-152.12(A)) (affirming grant of summary judgment where the plaintiff failed to come forward with any evidence of injury).

Here, Plaintiff fails to assert any allegation that his "property or person [was] injured by" Defendant's purported violation of the VCCA. Va. Code Ann. § 18.2-152.12(A); *see generally* 2d Am. Compl. ¶¶ 210–215. Instead, Plaintiff generally alleges that "Plaintiff fears HCA's IT[] Department" and that "they would hack . . . Plaintiff[']s personal information and devices." 2d Am. Compl. ¶ 214. This fails to satisfy the requirements of Va. Code Ann. § 18.2-152.12 with respect to actual injury being a necessary predicate for a civil claim, and thus the Court agrees with Defendant that Plaintiff has failed to state a claim under this statute. As a result, Count XIV will be dismissed.

### 5. Identity Trespass (Count XV)

Count XV, which is titled "Identify Theft," is again devoid of any articulated legal basis for the claim. In this Count, Plaintiff alleges that Defendant was subject to a data breach and that

Plaintiff's personal information was compromised.  2d Am. Compl. ¶ 217.  Beyond that, Plaintiff simply alleges that the breach was the result of Defendant's "misuse . . . of computer technology, . . . leaving devices more vulnerable to hackers . . . ."  *Id.* ¶ 218.  The Court finds that Plaintiff has failed to state a claim that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quoting Conley, 355 U.S. at 47).  The Court cannot infer Plaintiff's unexpressed intent and measure these allegations against some unknown legal standard, *Beaudett*, 775 F.2d at 1278, and so the Court will dismiss Count XV for failure to state a claim.

### 6.  Withholding of Wages (Count XVI)

Finally, in Count XVI, Plaintiff alleges that Defendant withheld Plaintiff's wages from various days, in violation of Va. Code Ann. § 40.1-29.3.  This claim fails for two reasons.  First, although Plaintiff has alleged that Defendant withheld wages, he has not alleged facts to suggest that Defendant withheld *overtime* wages, which is all that is protected by Va. Code Ann. § 40.1-29.3.  *See* § 40.1-29.3(C) ("If an employer fails to pay *overtime* wages to an employee in accordance with this section, the employee may bring an action against the employer . . . ." (emphasis added)).  Second, the provisions of § 40.1-29.3 only apply to employees of "derivative carriers," which are a subset of "air carrier[s] . . . subject to the provisions of the federal Railway Labor Act, 45 U.S.C. § 181 et seq."  § 40.1-29.3(A) (defining "employee," "derivative carrier," and "carrier" for purposes of the code provision).  As Defendant is not an air carrier, it is not subject to Va. Code Ann. § 40.1-29.3.  Thus, Plaintiff fails to state a claim for which this Court may grant relief in Count XVI, and this Count will also be dismissed.

## D.  Summary of 12(b)(6) Analysis

For the reasons set forth above, the Court will grant the Motion to Dismiss as to all of Plaintiff's claims except for Plaintiff's FMLA retaliation claim (Count VI).  However, Plaintiff may proceed on Count VI only to the extent that it is predicated on Defendant's acts of (1) delaying Plaintiff's return-to-work, and/or (2) imposing different work standards upon Plaintiff's return.

## E.  Leave to Amend

The decision whether to grant leave to amend rests "within the sound discretion of the district court."  *Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999) (citing *Foman v. Davis,* 371 U.S. 178 (1962)).  However, Courts will "freely give" a party leave to amend their complaint "when justice so requires."  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  Federal Rule of Civil Procedure 15(a)(2) is a "liberal rule" that favors "resolving cases on their merits instead of disposing of them on technicalities."  *Id.*  Courts will only deny leave to amend when it would prove to be prejudicial to the opposing party, "there has been bad faith on the part of the moving party, or the amendment would have been futile."  *Id.*  An amendment is futile where the amended complaint could not survive a motion to dismiss.  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).  "Leave to amend should be denied on the ground of futility only when the proposed amendment is clearly insufficient or frivolous on its face."  *Cappetta v. GC Servs. P'ship*, 2009 WL 482474, at *4 (E.D. Va. Feb 24, 2009) (citing *Davis*, 615 F.2d at 613).

As a preliminary matter, the Court notes that Plaintiff has two presently pending motions for leave to amend:  the first-filed Motion to Amend Complaint, ECF No. 18, and the subsequent Amended Motion for Leave to File Third Amended Complaint, ECF No. 24.  Because the Amended Motion clearly supersedes the Motion to Amend Complaint, the Court will deny the

earlier filed Motion to Amend as moot and proceed only with analyzing the amendments proposed

in the Amended Motion for Leave to File Third Amended Complaint.

1.  Proposed Amendments

The proposed Third Amended Complaint seeks to add CJW Medical Center ("CJW") and

HCA Healthcare as Defendants ("HCA").  *See* Prop'd 3d Am. Compl., ECF No. 24-1.  It contains

fourteen counts, which allege as follows:[18]

| | |
|---|---|
| Count I: | Age Discrimination, *id.* ¶¶ 24–36; |
| Count II: | Disability Discrimination, *id.* ¶¶ 37–49; |
| Count III: | Retaliation, *id*. ¶¶ 50–61; |
| Count IV: | Hostile Work Environment, *id*. ¶¶ 62–73; |
| Count V: | Wrongful Termination, *id*. ¶¶ 74–85; |
| Count VI: | Breach of Contract, *id*. ¶¶ 86–92; |
| Count VII: | Defamation, *id*. ¶¶ 93–105; |
| Count VIII: | Intentional Infliction of Emotional Distress ("IIED") , *id*. ¶¶ 106–16; |
| Count IX: | FMLA Violations, *id*. ¶¶ 117–29; |
| Count X: | ERISA Violations, *id*. ¶¶ 130–40; |
| Count XI: | Violation of the Virginia Human Rights Act, *id*. ¶¶ 141–53; |
| Count XII: | Invasion of Privacy, *id*. ¶¶ 154–63; |
| Count XIV: | Violation of the Computer Fraud & Abuse Act, 18 USC § 1030, *id*. ¶¶ 164–75. |

Defendant argues that permitting amendment by way of Plaintiff's Third Amended Complaint

would be both futile and prejudicial to Defendant.  *See generally* Opp'n Am. Mot. Amend, ECF

No. 25.  Broadly speaking, Defendant argues that the proposed Third Amended Complaint fails to

---

[18] Plaintiff omits any Count XIII.

remedy the deficiencies that Defendant addressed in its Motion to Dismiss, unfairly continues to add new claims and new theories of liability, improperly groups Defendants together, and fails to state a claim with respect to the new state law claims. *Id.* Plaintiff disagrees, arguing that amendment is appropriate since he was fired by Defendant on March 28, 2024, and this information was not included his Second Amended Complaint that was docketed pursuant to the Court's Order on March 29, 2024. Pl.'s Reply Supp. Am. Mot. Amend 2, ECF No. 26. Plaintiff argues that this new development also warrants adding two Defendants. *Id.* Finally, Plaintiff argues that he has diligently pursued his claims and exhausted all his administrative remedies. *Id.*

### 2.  Plaintiff Fails to State a Claim Against the Newly Added Defendants

As an initial matter, the Court finds that Plaintiff fails to state a claim against the two Defendants he proposes to add to the suit, CJW and HCA. Plaintiff does not sufficiently allege the relationship between HCA, CJW, and the allegations set forth in his Proposed Third Amended Complaint. The only mention of CJW in the Proposed Third Amended Complaint appears under Plaintiff's "Parties" subheading, Prop'd 3d Am. Compl. ¶ 5. And while HCA appears marginally more often (a total of five times, *see id.* ¶¶ 2, 3, 6, 15, 52), Plaintiff does not allege any facts to illustrate how and in what manner HCA's conduct gave rise to the injuries alleged. Absent any specific allegations as to these parties, their inclusion does indeed appear to be an example of impermissible "group pleading." *See Navient Sols., LLC v. Law Offs. of Jeffrey Lohman*, 2020 WL 1867939, at *7 (E.D. Va. Apr. 14, 2020) ("Group pleading . . . attributes allegations to a subset of defendants rather than to a particular defendant" and is only permissible when a plaintiff "sufficiently 'identifie[s] the individual defendants and differentiate[s] between their conduct.'" (quoting *Transp., Inc. v. Gilkison*, 2015 WL 1598081, at *3, *12 (N.D.W. Va. May 3, 2012))). Because Plaintiff fails to provide HCA and CJW with "'fair notice' of the claims asserted against

them" as required by Federal Rule of Civil Procedure 8, *Edwards v. City of Goldsboro*, 178 F.3d 231, 245 (4th Cir. 1999), the Court finds that amendment would be futile in this respect.

### 3.   Age Discrimination (Count I), Disability Discrimination (Count II) and Hostile Work Environment (Count IV)

Counts I, II and IV are futile because Plaintiff's claims for age discrimination, disability discrimination, and hostile work environment are all claims subject to an administration exhaustion requirement, but they fall outside the scope of Plaintiff's EEOC charge, *see supra* Part IV.A., and Plaintiff does not allege that he filed a subsequent charge with the EEOC to properly exhaust his administrative remedies with respect to these newly added claims.  Thus, amendment would be futile on Counts I, II, and IV as well.

### 4.  EEOC Retaliation (Count III)

In Count III of the proposed complaint, Plaintiff alleges that he engaged in protected activity by filing EEOC Complaints in 2020 and 2022 and by making internal complaints regarding discriminatory practices and unfair treatment; that Plaintiff made Defendant aware of his complaint(s); and that Plaintiff thereafter experienced adverse employment actions, "including but not limited to being placed on a Performance Improvement Plan (PIP) immediately after his complaints, receiving unwarranted disciplinary actions, and being assigned more complex and time-consuming workloads designed to impair his productivity," ultimately resulting in "the denial of bonuses[,] . . . significant changes to his work environment, . . . a decline in his mental health[,] [and] Plaintiff's wrongful termination."  Prop'd 3d Am. Compl. ¶¶ 51–53, 56–57.

As a preliminary matter, Plaintiff's retaliation claim, to the extent it rests on his filing of the 2020 and 2022 EEOC complaints, is critically undercut by the fact that Plaintiff voluntarily dismissed each of these claims, and there is no allegation indication that Defendant was made aware of these filings.  *See id.* ¶ 14 (describing Plaintiff's voluntary dismissal of his 2020 EEOC

claim); *id.* ¶ 17 (describing Plaintiff's voluntary dismissal of his 2022 EEOC claim).  Thus, Plaintiff cannot establish any causal connection between his protected activity (the EEOC filings) and Defendant's subsequent actions.  *Okoli*, 648 F.3d at 223 (describing the essential elements of a *prima facie* case of retaliation, one of which is that "the protected activity was causally connected to the employer's adverse action").

To the extent Plaintiff rests his retaliation claim on his "*internal* complaints regarding discriminatory practices and unfair treatment," Prop'd 3d Am. Compl. ¶ 51, this claim is barred for failure to exhaust administrative remedies.  Unlike claims of retaliation experienced as a result of an individual's filing an EEOC complaint, which are not subject to an administrative exhaustion requirement, *see Hentosh*, 767 F.3d 413, 416 (4th Cir. 2014), claims of retaliation experienced after *internally* reporting discrimination *do* require administrative exhaustion, *see Riley v. Tech. & Mgmt. Servs. Corp., Inc.*, 872 F. Supp. 1454, 1459–60 (D. Md. 1995) (finding that where an act of retaliation occurred prior to the filing of the EEOC charge and the plaintiffs failed to check the "retaliation" box, the retaliation claims were not administratively exhausted), *aff'd*, 79 F.3d 1141 (4th Cir. 1996); *see also McMillan v. S.C. Dep't of Corr.*, 16 F. Supp. 2d 635, 646 (D.S.C. 1997) ("Administrative remedies must be exhausted . . . when the alleged retaliation could have been raised in the original EEOC complaint."), *aff'd*, 153 F.3d 721 (4th Cir. 1998).

Due to these deficiencies with respect to both aspects of Plaintiff's attempted retaliation claim, amendment to add this Count would be futile.[19]

---

[19] The Court acknowledges that, in this Count, Plaintiff also alleges that "[t]he culmination of retaliatory actions resulted in Plaintiff[']s wrongful termination on March 28, 2024, shortly after he had filed another EEOC complaint and while he was on approved FMLA leave."  Prop'd 3d Am. Compl. ¶ 57.  However, the "Allegations" section of Plaintiff's proposed complaint only reflect an EEOC "inquiry" filed in March of 2023 and Plaintiff's request and approval for FMLA leave in June of 2023.  *See id.* ¶¶ 19, 21.  There is nothing to suggest that Plaintiff filed *another* EEOC complaint or took additional FMLA leave after 2023, such that Plaintiff is now alleging anything more than the retaliation claims the Court has previously analyzed in the context of Plaintiff's (controlling) Second Amended Complaint, *supra* Part IV.B.  So, the Court does not construe this aspect of the Proposed Third Amended Complaint as stating a new claim.

5.  Wrongful Termination (Count V)

In Count V, Plaintiff asserts a claim for wrongful termination under Virginia law.  Prop'd 3d. Am. Compl. ¶ 75.  In Virginia, employment is generally terminable at any time, for any reason, or for no reason at all.  *Lockhart v. Commonwealth Educ. Sys. Corp.*, 439 S.E.2d 328, 330 (Va. 1994).  However, "an at-will employee [may] bring a tortious wrongful discharge claim if the termination violates Virginia public policy as expressed in a Virginia statute."  *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 550 (E.D. Va. 2022) (citing *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985)).  This type of so-called "*Bowman* claim" may only be brought under one of three circumstances:  (1) "an employer violated a policy enabling the exercise of an employee's statutorily created right;" (2) "the public policy violated by the employer was explicitly expressed in  the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy;" or (3) the employee was terminated for their "refusal to engage in a criminal act."  *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 710–11 (Va. 2002).

All Plaintiff asserts in support of this Count is that Plaintiff consistently received positive reviews prior to a change in management and a resulting hostile work environment, Prop'd 3d Am. Compl.  ¶ 76; that "his termination was in retaliation for his repeated complaints about discriminatory practices, hostile work environment, and unethical behavior, which are protected activities under various employment laws," *id.* ¶ 77; and that "Defendant's actions, including Plaintiffs termination, were against the public policy of . . . Virginia, which protects employees from retaliatory discharge for engaging in protected activities, including but not limited to filing complaints about discriminatory practices and other violations of law," *id.* ¶ 83.

These allegations fail to state a *Bowman* claim because "Virginia courts have regularly held that 'when a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise.'" *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 553 (E.D. Va. 2022) (quoting *Concerned Taxpayers v. Cnty. of Brunswick*, 455 S.E.2d 712, 717 (Va. 1995)). Relevant here, the Virginia Human Rights Act creates its own "remedial scheme" prohibiting discrimination in employment and retaliation for reporting or opposing discriminatory practices, *see generally* Va. Code Ann. § 2.2-3905; this precludes Plaintiff's present attempt to state a claim for wrongful termination action under *Bowman*. *See, e.g.*, *Hice*, F. Supp. 3d at 551–54 (finding that the VHRA precludes *Bowman* discrimination claims). Thus, amendment to add this claim would also be futile.

### 6. Breach of Contract (Count VI)

Plaintiff's newly added breach of contract claim in Count VI would likewise be futile, because it is time-barred. Specifically, Plaintiff predicates his breach of contract claim on his receipt of corrective actions and verbal warnings in July and September of 2018. Prop'd Third Am. Compl. ¶ 88. Under Virginia law, breach of employment contract claims are governed by a five-year limitations period. *Cruz v. Maypa*, 773 F.3d 138, 147 (4th Cir. 2014) (citing Va. Code Ann. § 8.01-246(2)). Such claims accrue "when the breach[es] of contract occur[red]." *Id.* (alterations in original) (quoting Va. Code Ann. § 8.01-230). Here, because Plaintiff did not file suit until October of 2023,[20] *see* Compl., ECF No. 1-2 (stamped with a filing date of October 31,

---

[20] Amendments arising "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" relate-back to the date of the original pleading. Fed. R. Civ. P. 15(c)(1)(B).

2023), and the breaches of which he complains occurred in July and September of 2018, the Court

finds that the claims are time-barred.[21]

### 7.  Defamation (Count VII)

In Count VII, Plaintiff attempts to state a new defamation claim, stemming from comments

Plaintiff's manager, Kristin Fessick, made to Plaintiff "in the presence of other employees and

supervisors," "making false implications about Plaintiff[']s competence and professional

capabilities."  Prop'd 3d Am. Compl. ¶¶ 98–99.  Just as with Plaintiff's newly proposed breach of

contract claim, however, Plaintiff's defamation claim is futile because the statute of limitation has

run.  Virginia's statute of limitation for defamation is one year.  Va. Code Ann. § 8.01-247.1

("Every action for injury resulting from libel, slander, insulting words, or defamation shall be

brought within one year after the cause of action accrues.").  Plaintiff's claim relates to statements

made by Fessick in 2020, and as such they are no longer actionable as they fall outside of the one-

year period prior to Plaintiff's filing of his original Complaint in 2023.

### 8.  Intentional Infliction of Emotional Distress (Count VIII)

In Count VIII, Plaintiff attempts to add a claim for the tort of intentional infliction of

emotional distress (IIED), insofar as Defendant "systematically target[ed] Plaintiff with

unwarranted disciplinary actions, excessively monitor[ed] and alter[ed] Plaintiff[']s work

environment and computer settings without consent, and ma[de] derogatory and demeaning

comments towards Plaintiff."  *E.g.*, Prop'd 3d Am. Compl. ¶ 108.  To state an IIED claim in

Virginia, a plaintiff must allege that "(1) the wrongdoer's conduct was intentional or reckless; (2)

that his conduct was outrageous and intolerable, offending the generally accepted standards of

---

[21] Plaintiff presents no argument for tolling of the limitations period, and the Court does not independently find grounds for any such tolling.

decency and morality; (3) that there is a causal connection between the conduct and the emotional distress; and (4) that the resulting emotional distress was severe." *Zaklit v. Glob. Linguist Sols., LLC*, 53 F. Supp. 3d 835, 847 (E.D. Va. 2014) (quoting *Ortiz v. Panera Bread Co.*, 2011 WL 3353432, at \*6 (E.D. Va. Aug. 2, 2011), which in turn cited *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)).

Plaintiff's IIED claim is futile because Plaintiff provides nothing but deficient and/or conclusory allegations to support the element that Defendant's conduct "was outrageous and intolerable, offending the generally accepted standards of decency and morality." *Zaklit*, 53 F. Supp. 3d at 847. To satisfy this element, "a plaintiff must allege conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at 848 (quoting *Russo v. White*, 400 S.E.2d 160, 163, (Va. 1991)). "This element 'cannot be satisfied by [merely] alleging that the defendant's behavior was tortuous, or even criminal.'" *Id.* (quoting *Ortiz*, 2011 WL 3353432, at \*6); *see also Hatfill v. New York Times Co.*, 416 F.3d 320, 336 (4th Cir. 2005), *superseded on other grounds by statute, as stated in Dunston v. Huang*, 709 F. Supp. 2d 414, 419 (E.D. Va. 2010).

Plaintiff's allegations that he was systematically targeted for discipline, excessively monitored, and demeaned, Prop'd 3d Am. Compl. ¶ 108, while unfortunate if taken as true, do not by any means "go beyond all possible bounds of decency." *Zaklit*, 53 F. Supp. 3d at 848. Thus, Plaintiff has failed to state a claim for IIED, and so amendment to add this claim would be futile.

9.  FMLA Violation (Count IX)

In Count IX, Plaintiff largely restates the FMLA claim he articulated in his Second Amended Complaint, though he appears to have pared-down the underpinning allegations

somewhat. *See* Prop'd 3d Am. Compl. ¶¶ 117–29. Because the Court has already determined that Plaintiff's FMLA claim as stated in the Second Amended Complaint survives Defendant's Motion to Dismiss, and nothing in the proposed amended version changes the Court's prior analysis, *see supra* Part IV.B.2, the Court finds that Plaintiff's request to amend as to this Count is unnecessary.

### 10.  ERISA Violation (Count X)

In Count X, Plaintiff endeavors to add a claim pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq*. *See generally* Prop'd 3d Am. Compl. ¶¶ 130–40. However, amendment to add this claim would be futile because "an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits." *Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228, 241 (4th Cir. 2022) (citing *Makar v. Health Care Corp. of Mid-Atlantic (CareFirst)*, 872 F.2d 80, 82 (4th Cir. 1989)). "The exhaustion requirement means that claimants must follow the Plan's internal procedures for a 'full and fair review' of a plan administrator's denial of a claim for benefits." *Wilson*, 27 F.4th at 241 (citing *Makar*, 872 F.2d at 82). Plaintiff's proposed Complaint does not allege any facts to demonstrate that Plaintiff has taken these necessary steps, and as such the claim would not survive a motion to dismiss for failure to exhaust administrative remedies.

### 11.  Violation of Virginia Human Rights Act (Count XI)

In Count XI, Plaintiff seeks to add a claim under the Virginia Human Rights Act (VHRA), for discrimination based on his age. *See generally* Prop'd 3d Am. Compl. ¶¶ 141–53. However, Plaintiff fails to allege facts to demonstrate that he has satisfied the VHRA's own administrative exhaustion requirement, which stands separate and apart from the federal EEOC-exhaustion scheme. *See* Va. Code Ann. § 2.2-3907; *Jordan v. Sch. Bd. of the City of Norfolk*, 640 F. Supp.

3d 431, 449–51 (E.D. Va. 2022) (dismissing VHRA as procedurally defective for failure to exhaust VHRA administrative processes; collecting cases from across the Eastern District of Virginia and Virginia, and comparing to the federal and other states' anti-discrimination schemes).    Thus, amendment to add this claim would be futile.

### 12.  Invasion of Privacy (Count XII)

In Count XII, Plaintiff attempts to articulate an amorphous claim for "invasion of privacy." *See generally* Prop'd 3d Am. Compl. ¶¶ 154–63.  However, as with certain claims in Plaintiff's Second Amended Complaint, *see, e.g.*, *supra* Part IV.C.5., Plaintiff articulates no legal basis for this claim.  As stated previously, the Court cannot infer Plaintiff's unexpressed intent and measure his allegations against some unknown legal standard, *Beaudett*, 775 F.2d at 1278, and as such, Plaintiff has failed to state a claim that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47).  Thus, amendment as to this claim would also be futile.

### 13.  Violation of the Computer Fraud and Abuse Act (Count XIV)

Lastly, in Count XIV, Plaintiff attempts to state a claim based on Defendant's alleged violation of the federal Computer Fraud and Abuse Act (CFAA).  Prop'd 3d Am. Compl. ¶¶ 164–75 (citing, in ¶ 165, 18 U.S.C. § 1030(a)(2)(C)).  While § 1030 is principally a criminal statute, it also establishes a civil cause of action for "[a]ny person who suffers damage or loss by reason of a violation of this section."  *Id.* § 1030(g).  However, the right to a civil action is caveated insofar as one "may be brought *only* if the conduct involves 1 [sic] of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."  *Id.* (emphasis added).  These factors are:

> (I)  loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;

(II)  the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

(III)  physical injury to any person;

(IV)  a threat to public health or safety; [or]

(V)  damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security[.]

*Id.* § 1030(c)(4)(A)(i)(I)–(V).  Plaintiff fails to allege facts to support any of these necessary factors.

Specifically, Plaintiff's allegations concerning the harm that resulted from Defendant's alleged violation of the CFAA amount only to the following:  "Defendant's actions included altering Plaintiff[']s work records and productivity logs," Prop'd 3d Am. Compl. ¶ 169; Plaintiff experienced "technical difficulties that adversely affected Plaintiff[']s ability to perform his job duties  effectively," *id.* ¶ 170; he experienced "severe emotional distress and anxiety," *id.* ¶ 171, and that he ultimately suffered "loss of professional reputation, emotional distress, loss of privacy, and financial losses due to impaired work performance and wrongful termination, *id.* ¶ 174.  None of these harms clearly involve one of the § 1030(c)(4)(A)(i) factors set forth above.

The closest Plaintiff comes to satisfying one of the above factors is through his allegation for general financial losses, but this allegation is nevertheless insufficient, because it alleges in a purely conclusory fashion that the acts of Defendant resulted in this financial loss.  Plaintiff includes no specific allegations tying Defendant's alleged unauthorized access of his devices to his untethered claim of "financial losses due to impaired work performance and wrongful termination," *id.*, i.e., *how* Defendant actually caused these necessary financial losses.  Thus, the Court declines to find that this harm allegation is sufficient to serve as a predicate for a civil action pursuant to § 1030(g), as it is too conclusory and speculative to support a plausible claim for relief.

*See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 570 (a complaint must contain more than "labels and conclusions;" it must allege "enough facts to state a claim to relief that is plausible on its face").  Thus, as Plaintiff has failed to state a claim upon which the Court could grant relief, amendment to add this Count would be futile.

    14.  Summary of Amendment-Futility Findings

    For the reasons set forth above, the Court finds that Plaintiff's first-filed Motion to Amend is moot based on the filing of the subsequent Amended Motion for Leave to File Third Amended Complaint.  The Court further finds that amendment by way of the Third Amended Complaint would be futile as to the addition of proposed-Defendants HCA and CJW, as to all of the newly added claims, and as to all of the claims that Defendant otherwise attempts to amend and/or supplement and which the Court previously found to be deficient in the course of its 12(b)(6) analysis, *supra* Part IV.A–D.  Therefore, the Court will deny Plaintiff's Amended Motion for Leave to File Third Amended Complaint, in its entirety.

## V. CONCLUSION

    Based on the foregoing, the Court will grant-in-part and deny-in-part Defendant's Motion to Dismiss.  The Court will grant the Motion to Dismiss as to all but Plaintiff's FMLA retaliation claim, which appears as Count VI of the Second Amended Complaint.  The Court will further deny Plaintiff's Motion to Amend as moot, and deny Plaintiff's Amended Motion for Leave to File Third Amended Complaint as futile.  The case will proceed on the basis of the Second Amended Complaint's FMLA retaliation claim, alone.

    An appropriate Order will accompany this Memorandum Opinion.

                                /s/

                            Roderick C. Young
                            United States District Judge

Date: <u>March 28, 2025</u>
Richmond, Virginia